Chester A. SNOW, Petitioner,

v.

DISTRICT OF COLUMBIA, Respondent.

Chester A. SNOW, t/a Chester A. Snow Rents, Petitioner,

v.

DISTRICT OF COLUMBIA, Respondent.

Nos. 19232, 19233.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 4, 1965.

Decided Nov. 22, 1965.

Petition for Rehearing En Banc Denied Feb. 1, 1966.

Mr. Bernard I. Nordlinger, Washington, D. C., with whom Messrs. William P. Daisley and William T. Plumb, Jr.,

Washington, D. C., were on the brief, for petitioner.

Mr. Henry E. Wixon, Asst. Corporation Counsel for the District of Columbia, with whom Mr. Chester H. Gray, Corporation Counsel, Mr. Milton D. Korman, Principal Asst. Corporation Counsel, and Mr. Ronald L. Lenkin, Asst., Corporation Counsel, were on the brief, for respondent.

Before PRETTYMAN, Senior Circuit Judge, and TAMM and LEVENTHAL, Circuit Judges.

PRETTYMAN, Senior Circuit Judge.

Appellant Snow bought from one Guy all the stock in Lombardy, Inc., and paid him for it $1,000,000 in cash and a secured note.[1] Immediately thereafter he (Snow), as the sole stockholder, liquidated the corporation, transferring to himself all the assets. These were of various sorts, of a total fair value of $1,000,000. On the books of Lombardy $300,000 of these assets appeared as an earned surplus, that is, accumulated corporate earnings.

The District of Columbia Tax Assessor levied income taxes upon Snow on account of the transaction. The District of Columbia Tax Court affirmed. Snow appeals. The controversy comes to us in two cases. The first concerns the transaction itself, and the second concerns the allowance to Snow for depreciation on the assets which thus came into his hands.

The District statute[2] provides that any distribution by a corporation, whether prior to, during, upon, or after liquidation, from accumulated profits is a dividend.[3] We followed the statute in Berliner v. District of Columbia,[4] and do not now reexamine that problem. So we hold that, upon receiving the accumulated earned surplus of Lombardy, although during or upon a dissolution, Snow received a dividend of $300,000. However, that is only one phase of the problem.

The remainder of the transaction was a dissolution, a liquidation. The stock of the corporation was turned in; the assets were distributed. Thereupon the corporation ceased to exist, the stock ceased to exist, and the assets were in new ownership. The stock which Snow relinquished had cost him in cash $1,000,000. The assets he received, other than the dividend of $300,000, were of a value of $700,000. The consequences of this event, or these events, involve some elusive concepts.

The District says that in Berliner, supra, we specifically determined that receipt by a District taxpayer of a liquidating dividend upon corporate dissolution does not constitute a sale or exchange of his stock. We did not so hold. That opinion was meticulous in repeatedly

---

1. For simplicity's sake we use round figures.

2. D.C. CODE § 47–1551c(m) (1961 ed.).

3. The provision reads:

"(m) The word 'dividend' means any distribution made by a corporation (domestic or foreign) to its stockholders or members, out of its earnings, profits, or surplus (other than paid-in surplus), whenever earned by the corporation and whether made in cash or any other property (other than paid-in surplus), whenever earned by the corporation and whether made in cash or any other property (other than stock of the same class in the corporation if the recipient of such stock dividend has neither received nor exercised an option to receive such dividend in cash or in property other than stock instead of stock) and whether distributed prior to, during, upon, or after liquidation or dissolution of the corporation: *Provided, however,* That in the case of any dividend which is distributed other than in cash or stock in the same class in the corporation and not exempted from tax under this subchapter, the basis of tax to the recipient thereof shall be the market value of such property at the time of such distribution: *And provided, however,* That the word 'dividend' shall not include any dividend paid by a mutual life insurance company to its shareholders."

4. 103 U.S.App.D.C. 351, 258 F.2d 651, cert. denied 357 U.S. 937, 78 S.Ct. 1384, 2 L.Ed.2d 1551 (1958).

pointing out that we were dealing with a distribution of earnings, an earned surplus. From the opening statement of the question presented, "whether amounts distributed in complete liquidation of a corporation, to the extent that those amounts * * * represent corporate earnings, are properly includible in the stockholders' gross income as a dividend", repeatedly throughout the opinion to the final sentence, " * * * to treat distributions in liquidation as dividends to the extent that earnings are included * * * ", we iterated and re-iterated that our subject was a distribution of earnings. More specifically, in *Berliner* we reasoned in part from the premise of the federal act of 1921. We said that under that act distributions in liquidation fell within the definition of a dividend "to the extent that they represented accumulated earnings". And we continued that the District statute contains virtually the same definition as did that federal statute, with the significant addition that Congress itself included a specific provision "that the term 'dividend' includes a distribution of earnings 'during, upon, or after liquidation.' " We continued: "Had Congress intended that such a distribution be treated as an exchange * * *." Obviously by "such" we referred to the subject immediately under discussion, which was "a distribution of earnings". A bit later we referred to the purposeful selection by Congress of "the method of taxing liquidating distributions *of earnings* as dividends". (Emphasis ours.) *Berliner* dealt with the distribution of earnings, clearly, emphatically and exclusively. And indeed that condition may have been a necessary one; a holding that the return to a stockholder of amounts paid in by him for issuance of his stock is a taxable dividend, i. e., income, might void whole sections of an income tax statute.

It is said that this transaction was indeed a liquidation—a distribution of all the assets, a surrender of all the stock, and a dissolution of the corporation; thus the distribution was a liquidating dividend; but, it is said, under the District statute a liquidating dividend is taxed as an ordinary dividend to the extent of the accumulated earnings of the corporation. Thus, it is said, Snow's relinquishment of all his stock for all the assets was a liquidating dividend; that is, it was a return to him of all his investment—a million dollars of assets for a million dollars of stock—and so no loss and no gain occurred on that phase of the transaction; but under the statute so much of this liquidating dividend as was earnings was taxable to him as an ordinary dividend. Therefore, it is said, the $300,-000 paid Snow from earned surplus was indeed in redemption and in complete retirement of $300,000 of the stock, but at the same time under the statute that amount must be taxed to Snow as an ordinary dividend. The nub of this suggestion—and its fallacy—is that. in essence this $300,000 can be treated at one and the same time and in the same transaction as a return to a stockholder of his investment in the stock and as a distribution of earnings upon that stock. We think the same dollar cannot at the same time be both.

■ Dividend and return of investment are disparate terms. A dividend, as the Supreme Court pointed out at least as long ago as 1921,[5] is a gain or profit derived from the individual's capital interest in a corporation, not in liquidation of that capital; it is a distribution of accumulated profits of a corporation, produced by and proceeding from the investment. It was upon that basis that the Court in a series of cases held dividends to be income; a mere return of investment was not income and could not have been taxed. Implicit throughout our reasoning in *Berliner* is the proposition that under the District statute a dividend and a payment for surrender of stock are two different concepts. Congress made a conscious choice when it decreed that "dividend" should mean any distribution of earnings, whether made "prior to, dur-

5. United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180 (1921).

ing, upon, or after liquidation or dissolution". It is quite interesting to note that Congress did not identify a dividend as including a part of a liquidation; the specifications are chronologic—prior to, during, upon, or after; notably not "as part of". A distribution made in liquidation of the stock-ownership, or as a part of such liquidation, might not be taxable as income. Indeed, if such a distribution were not of earnings and did not exceed the cost to the stockholder, thus representing to him merely the return of his investment, it is not income. The Supreme Court has so indicated many times. The choice of language by the Congress at this point seems to have been by draftsmen knowledgeable in the field.

■ The affirmative statutory declaration that a distribution made by a corporation out of corporate earnings is a dividend carried as a corollary its negative complement, that is, that such a distribution is not a payment in exchange for or in extinguishment of the stock upon which it is declared. It means that the stock remains in being.

■ Distributions by a corporation may be (1) from its earnings, (2) from an increased value of its assets or some of them, or (3) a return to stockholders of that which they had put into the venture. The first two are gains to the stockholder, separated from the body of his investment by the act of distribution. The third is not a gain but is a return of what the stockholder already had, and so is not income. These principles have been prodigiously productive of litigation.

Thus we think a distribution such as this one must be either a dividend or a return of the investment for cancellation. It cannot be both. Specifically, the $300,000 distributed to Snow, being a distribution of corporate earnings, was a dividend, even though made during or upon a liquidation. It could not at the same time be a consideration for the relin-

quishment of the stock or a return to the stockholder of his investment in the stock. After receipt of the $300,000 Snow still held the entire stock of Lombardy, for which he had paid $1,000,000. It would seem quite clear to us that a corporation which had adequate assets on hand could not by a magician's corporate declaration cancel out completely a stockholder's investment but leave him with his stock-ownership intact. In other words, Lombardy could not say to Snow, "Here is $300,000 out of our earnings; it is a dividend, a return to you on your investment; but now you no longer have $300,000 of stock; that much of your investment has disappeared."

The foregoing is the purport of our holding in *Berliner*. We there specifically held that a distribution of accumulated earnings, whether prior to, during, upon, or after a liquidation, is a dividend and not to be deemed as a payment in exchange for the stock.

So we think that this $300,000 distributed to Snow as a dividend did not serve to cancel out any of his investment. His cost stood unimpaired at $1,000,000. This then was his basis.[6] He received for this stock, in a complete liquidation of the corporation, assets of a value of $700,000. He had a loss of $300,000 on this phase of the transaction.[7]

In Snow's hands neither the stock nor the assets were capital assets, since at the time of these events he had held neither for two years. So the loss was a noncapital loss and was fully deductible.[8]

It has been suggested that the distribution of corporate assets in return for the corporate stock, i. e., a corporate liquidation, is not a "tax event", meaning that no tax effect flows from such an action. But the argument will not withstand examination and, if sustained, would, it seems to us, greatly embarrass the tax authorities. Surely the District would impose a tax upon a gain derived

6. D.C. Code § 47–1583.

7. D.C. Code § 47–1583a(a).

8. D.C. Code § 47–1557b(a) (4) (B).

from such a transaction.[9] If Snow had paid only $500,000 for the stock, surely the District would urge that when he received $700,000 for that stock he owed a tax on $200,000. Indeed its counsel admitted as much in oral argument. The statute neither states nor implies a different disposition of non-capital gains and non-capital losses in the computation of taxable net income. Under the statute, if a non-capital gain is to be included in net income in a certain transaction, a loss upon the same sort of transaction is to be included in the computation.

The District suggests the transaction was not entered into for profit. Snow acquired an apartment house and in the course of the acquisition parted with several hundred thousand dollars of cash. It stretches the imagination to conceive of a motive if he did not intend to derive income from it. We are not impressed with this contention of the District.

It makes no difference, taxwise, in the view which we take of the case, whether we consider the events here involved as one transaction or as two. If the first, the simple situation is, as we have said, that Snow had a million dollars in cash and ended up with the same amount in miscellaneous assets. If the second, he had a dividend of $300,000 and a deductible loss of $300,000. We emphasize, before leaving this case, that no scheme to evade or avoid a tax is involved here, and there is no sham transaction which might erase or nullify any of the actual events.

We hold in the first of these two cases that Snow received a taxable dividend of $300,000 when he received the earned surplus of the corporation, and that he sustained a deductible loss of $300,000 when in the other part of the transaction he received $700,000 of assets in return for the surrender of stock for which he had paid $1,000,000 in cash.

The second of the two cases (No. 19233) concerns the treatment of depreciation on the apartment building after it came into Snow's hands. He claimed depreciation computed upon the cost of the building to him. The District allowed an amount computed upon the corporation's book value of the building, that is, the original cost to it less accrued depreciation. The statute provides for a "reasonable allowance"[10] and further provides that the basis for the computation is the cost to the taxpayer or, in the case of an exchange, the fair market value at the time.[11] Without entering upon a consideration of either the philosophy or the semantics of depreciation allowances, we think that in this case a reasonable allowance is the proper proportion of the cost to Snow, which is the value of the stock he turned over for the property. Since he paid cash for that stock so nearly immediately to his acquisition of the depreciable property, no valuation problems seem to arise.

Reversed and remanded for entry of an order in accord with this opinion.

LEVENTHAL, Circuit Judge, did not participate in the consideration or disposition of this case.

On Petition for Rehearing En Banc

Before BAZELON, Chief Judge, and FAHY, DANAHER, BURGER, WRIGHT, McGOWAN, TAMM, and LEVENTHAL, Circuit Judges, in Chambers.

### ORDER

On consideration of respondent's petition for rehearing *en banc* and there not being a majority of the Circuit Judges of this Circuit in favor of a rehearing of the above-entitled case by the court *en banc*, the petition for rehearing *en banc* is hereby denied.

BAZELON, Chief Judge, joins in the attached statement of Circuit Judge FAHY.

9. D.C. CODE § 47–1506(b).

10. D.C. CODE § 47–1557b(a) (7).

11. D.C. CODE § 47–1583e(a) and (b).

**FAHY, Circuit Judge:**

In my opinion the petition of the District of Columbia for rehearing en banc should be granted. The question decided is an important one in the administration of the income tax laws of the District.

In the absence of reconsideration en banc with the benefit of further presentation by the parties I do not express a definite opinion as to the merits of the case; but I have substantial doubt about the correctness of the court's decision. There is weighty authority for the view that the transaction described in the opinion should be construed as a payment by petitioner of $1,000,000 not for stock of a corporation with $1,000,000 of assets but for acquisition of assets of the value of $1,000,000, namely, the cash of $300,000 and the apartment house worth $700,000.[1] Thus viewed the transaction was not in reality an investment in stock but the purchase of property. See United States v. Mattison, 273 F.2d 13, 17 (9th Cir.), (Annot., 83 A.L.R.2d 706), where it is said at 17:

> There is * * * an established exception to the rule giving effect to liquidating distributions, which is known as the Kimbell-Diamond rule. Under this doctrine, when a taxpayer who is interested primarily in a corporation's assets first purchases the stock and then liquidates the corporation in order to acquire the desired assets, the separate steps taken to accomplish the primary objective will be treated as a single transaction. Thus, even though the objective was accomplished in form by a purchase of stock, the substance of the transaction is a purchase of property. [Footnote omitted.]

There would remain the question whether so viewing the transaction the $300,000 should be considered as earned surplus which when acquired by peti-

tioner in the manner described was by reason of Section 47–1551c(m) of our income tax provisions a dividend to be included in petitioner's taxable income.

---

1. For convenience the figures here are rounded, as in the court's opinion.