**ESTATE of Migiel John ULINE, deceased, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA, Respondent.**

**No. 18256.**

United States Court of Appeals District of Columbia Circuit.

Argued May 13. 1964.

Decided March 3, 1966.

Petition for Rehearing En Banc Denied April 29, 1966.

Mr. Harold David Cohen, Washington, D. C., with whom Messrs. Robert B. Yorty and John R. Schmertz, Jr., Washington, D. C., were on the brief, for petitioners.

Mr. Henry E. Wixon, Asst. Corporation Counsel for the District of Columbia,

with whom Messrs. Milton D. Korman, Principal Asst. Corporation Counsel, and Donald T. Fish, Asst. Corporation Counsel, were on the brief, for respondent.

Before DANAHER, BURGER and WRIGHT, Circuit Judges.

DANAHER, Circuit Judge:

The petitioners filed a District of Columbia income tax return in behalf of the Estate of Migiel John Uline for the year ending December 31, 1960, reporting the receipt of 1960 "dividend" income in the amount of $32,764.47. The Estate paid a tax of $1,031.06. The District tax authorities assessed a deficiency of $588,-355.82 with a resulting deficiency in tax of $31,805.03, plus interest. The District of Columbia Tax Court on September 30, 1963 upheld the District, and these review proceedings followed. The facts are not in dispute.

Until the death of the decedent Uline on February 22, 1958 he owned all outstanding shares [1] of M. J. Uline Company, an Ohio corporation. The company as of December 31, 1959, consummated a sale of its business and all of its tangible assets to a new corporation for $725,000, payable partly in cash, and partly in notes having a stipulated value equal to the balance due on the notes. From the proceeds of that sale, M. J. Uline Company made a partial liquidating distribution on May 3, 1960, and a final distribution on December 14, 1960. The Estate thereupon, as sole stockholder, delivered its stock certificates to the corporation for cancellation. On December 28, 1960 a certificate of dissolution of M. J. Uline Company was filed in Ohio.

The petitioners had alleged in the Tax Court that prior to the liquidating distributions, "the capital account and the earned surplus account on the books of M. J. Uline Company as of December 14, 1960 * * * were as follows:

| | |
|---|---|
| Capital | $105,300.00 |
| Earned Surplus | 588,355.82 |
| Total | $693,655.82" |

After certain adjustments of $3,819.35, not in issue, the net capital account representing the amount originally paid in by the decedent was seen to be $101,480.-65. That figure was then deducted by the District tax authorities from the total net distribution of $689,836.47 to arrive at the earned surplus of $588,355.82. That amount when distributed to the Estate constituted a dividend and was income subject to tax, the District asserted.[2] The Tax Court agreed.

The petitioners in 1960 income tax return reported as ordinary dividend income to the Estate subject to tax only $32,764.47, arrived at by deducting from the total net distribution of $689,836.47, the amount of their claimed "basis" of $657,072.[3] The Estate argues here that the statute [4] does not tax dividends, per se, but only income, and the Estate could have no income by way of gains or profits until or unless the Estate recouped the "basis" of the stock which it had surrendered for cancellation. But the statute relied upon does not in the circumstances of this case involve gains or profits; rather, it specifies that "gross income" *shall* include income derived from *dividends*. And the term "dividend" clearly is defined to mean

> "any distribution made by a corporation * * * to its stockholders * * * out of its earnings, profits, or surplus (other than paid-in surplus), *whenever earned by the corporation * * ***

1. For federal estate and inheritance tax purposes, it was determined that those shares had a fair market value of $624 per share, or a total of $657,072. The petitioners herein have contended that this figure represents the Estate's "basis."

2. The District relied upon Berliner v. District of Columbia, 103 U.S.App.D.C. 351, 258 F.2d 651, cert. denied, 357 U.S. 937, 78 S.Ct. 1384, 2 L.Ed.2d 1551 (1958).

3. See note 1, *supra.*

4. D.C.CODE § 47–1557a(a) (1961).

whether distributed prior to, during, upon, or after liquidation or dissolution of the corporation." [5] (Emphasis added.)

■ Over and above the capital which the decedent had paid in, an amount which was not taxed at all, the company's books showed the entire remaining account to be "earned surplus." [6] Thus, when that earned surplus was distributed to the Estate, it became a dividend, and hence was income subject to tax. Such "a distribution is not a payment in exchange for or *in extinguishment of the stock upon which it is declared*." [7] (Emphasis added.) Earlier, in *Berliner*,[8] the court rejected the taxpayers' contention that such a transaction as this should be held to be an exchange. There can be no question as to the facts here for the parties expressly *stipulated* [9] in writing that M. J. Uline Company "sold all of its tangible assets" in a transaction which was consummated on December 31, 1959; in return, the corporation received $725,000 in cash or its equivalent; the net proceeds of the sale were reflected on the company's books as earned surplus. When distributed in the course of liquidation, both by statutory definition and by our decisional law, the Estate received a taxable dividend. There is no circumstance [10] shown on this rec-ord to predicate the Estate's claim that it need pay income tax only on the difference between the amount of the total net distribution and the fair market value of the stock. The Estate here stood in no different position than if the decedent Uline during his lifetime had caused his corporation to enter into the same transaction and thereafter to distribute the net earned surplus to himself as sole stockholder.

The Estate argues further that if the entire amount distributed is to be included "to the full extent of the corporation's accumulated earnings, regardless of the Estate's basis for its cancelled stock, it was entitled to offset against this amount the loss which it sustained in the disposition of the stock."

■■ That is another way of saying that the Estate should be entitled somehow to achieve a stepped-up basis. This court has held that unrealized appreciation in the value of the assets of a corporation will not become a dividend when the corporation on dissolution distributes those assets to its stockholders.[11] But that principle has no application here for M. J. Uline Company received full value upon the sale of its assets. When that realized value was distributed as earned surplus upon dissolution of the corporation, the Estate as sole stockhold-

---

5. D.C.CODE § 47–1551c(m) (1961).

6. There was no suggestion that any part of that surplus had *not* been "earned."

7. Snow v. District of Columbia, 124 U.S. App.D.C. ——, 361 F.2d 523 (No. 19232, Nov. 22, 1965), slip op. 6, rehearing *en banc* denied, February 1, 1966.

8. Berliner v. District of Columbia, *supra* note 2, 103 U.S.App.D.C. at 354, 355, 258 F.2d at 654, 655.

9. Cf. Verkouteren v. District of Columbia, 120 U.S.App.D.C. 361, 363 n. 2, 346 F.2d 842, 844 (1965); General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 206, 207, 56 S.Ct. 185, 80 L.Ed. 154 (1935).

10. The Estate points to D.C.CODE § 47–1557a(b) (3) (1961) as excluding from gross income the "value of property acquired by gift, devise, or inheritance." For its "basis," the Estate also points to D.C.CODE § 47–1583(b) (3) (1961) which provides in the case of property "acquired by gift or inheritance" a taxpayer is entitled to claim the highest valuation placed upon the transfer by the United States since the transfer to the taxpayer had been subject to tax by the Government.

But this case does not involve a sale of the Uline stock by some legatee who acquired it by "inheritance." The M. J. Uline Company's assets had been sold by the corporation itself.

11. District of Columbia v. Oppenheimer, 112 U.S.App.D.C. 239, 301 F.2d 563 (1962).

er received a taxable dividend. The decedent Uline had invested his capital of $101,480.65. On that investment, his Estate received a return of $588,355.82. There was no loss.[12] That is all there is to it.

Affirmed.

---

12. Moreover the Estate had received the stock as of the date of the death of its decedent on February 22, 1958. More than two years had elapsed before the first partial liquidating distribution occurred on May 3, 1960, with final payment following on December 14, 1960. Cf. Snow v. District of Columbia, *supra* note 7.