**Burton W. DOYLE, Petitioner,**

v.

**DISTRICT OF COLUMBIA, Respondent.**

**No. 19874.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 17, 1966.

Decided June 30, 1966.

Mr. Julius I. Fox, Washington, D. C., with whom Mr. C. Richard Beyda, Washington, D. C., was on the brief, for petitioner.

Mr. Henry E. Wixon, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Milton D. Korman, Acting Corp. Counsel, and Ronald L. Lenkin, Asst. Corp. Counsel, were on the brief, for respondent.

Before PRETTYMAN, Senior Circuit Judge, and DANAHER and McGOWAN, Circuit Judges.

DANAHER, Circuit Judge:

The taxpayer in 1963 was the majority stockholder in Doyle Printing & Offset Company, Inc., hereinafter the Corporation. On December 29, 1963, he transferred to that Corporation 3,170 of its shares for which he then received $40,000 in cash and a promissory note for $181,900.[1] The District of Columbia tax authorities assessed a deficiency in income tax of $9,260 plus interest which the taxpayer paid under protest. The District of Columbia Tax Court decided that the payment by the Corporation constituted a dividend as defined in section 47–1551c(m) D.C.CODE (1961), and the

---

1. The Corporation made full payment on the note in December, 1964.

taxpayer has here sought review of that decision.[2]

The taxpayer insists that the transaction constituted a sale by him of capital assets at the rate of $70 per share, so that the gain was expressly excludable from "gross income" as provided in section 47–1557a(b) (11) D.C.CODE (1961).

■ Concededly the payment by the Corporation to the taxpayer had been made from its earnings. Obviously, had the Corporation been liquidated entirely, the distribution from its earnings would have constituted a dividend.[3]

The Tax Court made findings of fact and reached ultimate conclusions which we deem controlling here.[4] It appears that for many years prior to 1950, the taxpayer was the sole proprietor of a printing and offset business. That year he formed the Corporation, transferred to it his interest in the business, and received 367 shares of the Corporation's no par value common stock.[5] Besides being the majority stockholder, the taxpayer was president and a director of the Corporation.

By October, 1963, the petitioner had decided to retire.[6] "He was 70 and he didn't want to go through the headaches of running the business and coming down every day,"[7] the testimony showed.

There ensued a series of transactions. The Tax Court found that on October 7, 1963, the Corporation "purported" to sell 25 shares of its own stock to one Tabb for the price of $40 per share. That same day the Corporation "purported" to sell to one Arthur B. Doyle, 500 shares of the Corporation's own stock at $40 per share. Certificates were accordingly issued to the buyers on October 7, 1963. These transactions had been negotiated as the result of action taken at a special meeting of the directors at which the taxpayer had explained it would be "most advisable" for the Corporation to sell some of its treasury stock at the prices mentioned as "a good means of assuring the continuing employment and loyalty" of the purchasers.

The Tax Court additionally found that the petitioner and the Corporation entered into an agreement "purporting" to have been executed on October 7, 1963. Under the agreement, the taxpayer was to sell and the Corporation to buy the taxpayer's remaining 3,170 shares of the Corporation's capital stock for $221,900. At a special meeting of the Board of Directors on October 12, 1963, the taxpayer notified the Board that he would entertain a proposal for the sale of his 3,170 shares "at $70 per share."[8]

2. 93 Wash.L.Rep. 1913, CCH DC CT ¶ 200–080 (1965).

3. Uline v. District of Columbia, 124 U.S. App.D.C. 5, 360 F.2d 820 (1966) ; Snow v. District of Columbia, 124 U.S.App.D.C. ——, 361 F.2d 523. (1965), rehearing en banc denied (1966) ; District of Columbia v. Oppenheimer, 112 U.S.App.D.C. 239, 301 F.2d 563 (1962) ; Berliner v. District of Columbia, 103 U.S.App.D.C. 351, 258 F.2d 651, cert. denied, 357 U.S. 937, 78 S.Ct. 1384, 2 L.Ed.2d 1551 (1958).

4. District of Columbia v. Seven-Up Washington, 93 U.S.App.D.C. 272, 275, 214 F.2d 197, 200, cert. denied, 347 U.S. 989, 74 S.Ct. 851, 98 L.Ed. 1123 (1954).

5. In 1961, each stockholder, following a stock split, received 10 new shares for each share originally held.

6. Then the owner of 3,670 shares, the taxpayer for a price of $70 per share sold 250 shares to Cecil Kuever and 250 shares to Henry Kuever. The District

assessed no tax on these two transactions. The remaining 3,170 shares transferred by the taxpayer to the Corporation, were thereafter carried as treasury stock, shown on the balance sheet as a deduction from the total capital of the Corporation.

7. The testimony of the Corporation's bookkeeper showed: "Mr. Burton W. Doyle was the boss. He ruled over any financial matters and he was the general boss. What he said went."

8. The record does not disclose just how the price of $70 per share was arrived at when the taxpayer was selling his own stock, whether to the individual purchasers, note 6, supra, or to the Corporation. Apparently, however, the remaining stockholders suffered no disadvantage. Business was excellent after the taxpayer retired. "We made more money in one year than we did in five or six years in the corporation before," the office manager testified.

Presently the Directors voted that the Corporation should acquire the taxpayer's stock, although no corporate business reason was thus sought to be served. The transaction was completed as of December 29, 1963, and the taxpayer thereafter had no connection with the business.

The record further showed that the taxpayer's 1950 investment was treated as being $36,700.[9] The Corporation meanwhile had prospered so that by 1964 undistributed earnings totaled $257,-745.94. In only three years had the Corporation paid a dividend, "and then only a small part of the earnings were distributed" the Tax Court observed.

The judge noted that the taxpayer had effectuated a distribution to himself with the purpose that he receive "what was considered to be his share of the corporation's capital and its retained or undistributed earnings or surplus." That distribution, after deducting the taxpayer's capital investment, was a taxable dividend, the Tax Court concluded.

■ We agree. The statute in pertinent part provides that

> "The word 'dividend' means any distribution made by a corporation * * * to its stockholders or members, out of its earnings, profits, or surplus (other than paid-in surplus), whenever earned by the corporation * * * and whether distributed prior to, during, upon, or after liquidation or dissolution of the corporation * * *."[10]

The taxpayer's petition for review had sought support from Swezey v. District of Columbia,[11] a slender reed indeed. The Tax Court there had made findings which completely distinguish the transaction then considered from that presented on our present record. The realities of the situation presented on the

*Swezey* record had there convinced the Tax Court that the effect of the transaction was the same as though the taxpayer had sold his stock to some purchaser other than the Corporation. Here, on the other hand, no matter how the transaction may have been labelled in terms of "buy" and "sell," the Tax Court saw [12] the taxpayer dominating a course of dealings prescribed by him, at rates apparently fixed by him, with a corporation controlled by him, to the end that he receive his share of the Corporation's capital and its previously undistributed earnings.

The decision of the Tax Court is

Affirmed.

---

9. The Tax Court found that actually the figure should have been $31,700, but since the District had made no point of that difference, the court did not disturb the assessment.

10. D.C.Code § 47–1551c(m) (1961), and see cases cited, note 3, *supra.*

11. 93 Wash.L.Rep. 15, CCH DC CT ¶ 200–061 (1964).

12. Cf. Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937 (1940).