**DISTRICT OF COLUMBIA, Petitioner,**

v.

**Louis NEYMAN, Respondent.**

**No. 21587.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 10, 1968.

Decided April 25, 1969.

Mr. Robert E. McCally, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel, Hubert B. Pair, Principal Asst. Corporation Counsel and Henry E. Wixon, Asst. Corporation Counsel, were on the brief, for petitioner.

Mr. Samuel H. Horne, Washington, D. C., for respondent.

Before PRETTYMAN, Senior Circuit Judge, and McGOWAN and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The question for our decision is whether the transaction in suit was a sale by a corporation's sole stockholder of his corporate stock resulting in a gain nontaxable by the District of Columbia, or was actually a corporate sale of assets which produced a taxable corporate dividend to the stockholder. The administrative ruling that the transaction bore the latter character was nullified by a determination of the District of Columbia Tax Court that it did not. We commence our review, as we always do, with a close examination of the relevant facts.

Respondent, a resident of the District, was the owner of all of the outstanding capital stock of the Victoria Apartment House Corporation, a Delaware entity, and he, his wife and his attorney were its directors and officers. Respondent purchased the stock about 1955 at a cost of $23,333.33, and maintained continuous ownership of it until early 1963. The corporation owned an apartment building and an adjoining parking lot in the District which were encumbered by a deed of

trust securing a corporate debt of approximately $105,000.

In the summer of 1962, respondent received an offer from David Korn and Zev Sufott to purchase those properties.[1] The offer contemplated respondent's acquisition of the real estate through liquidation of the corporation, and its subsequent sale by respondent to the offerors. Respondent rejected this proposition, stating that he was interested only in a sale of his stock in the corporation. Shortly thereafter, respondent accepted an offer from Korn and Sufott for the purchase of the stock, but this agreement was subsequently rescinded.

Finally, in September, 1962, the parties entered into another contract, the features and method of consummation of which gave rise to the present controversy. Respondent agreed to sell his stock for the price of $360,000 subject to specified adjustments. Of the purchase price, $105,000 was to be evidenced by an installment note executed by the purchasers and their spouses and secured by a deed of trust on the then corporately-owned realty. That deed of trust was to be junior to another deed of trust to secure the repayment of a $225,000 loan, for which the purchasers had arranged. The contract provided that the purchasers would dissolve the corporation, take title to its real estate, and execute and deliver the deferred purchase money note and the second deed of trust securing it.

At the time fixed for performance, respondent delivered in escrow to Lyon, Roache & Horan Title Settlements, Inc., the designated settlement agent, the documents required of him by the contract, including his endorsed stock certificates and the resignations of the officers and directors of the corporation. On the same day, the purchasers, in meetings as the new stockholders and as the new directors elected by themselves as the stockholders, authorized all corporate activities specified by the contract, including the dissolution and a plan for the liquidation of the corporation.[2] In January, 1963, the settlement agent completed the transaction.[3]

---

1. The offer was presented by a real estate broker, through whom the two subsequent offers mentioned in the text were also submitted.

2. See note 3, *infra*.

3. The activities of the purchasers and the settlement agent, upon which the District lays great stress, were found by the Tax Court to have been as follows:

On December 4, 1962, and after delivery of the stock of the corporation to the escrow agent Korn and Sufott, as stockholders of the corporation, held a meeting at which they were elected as directors, and at which the loan to the corporation of $225,000 from Perpetual Building Association was accepted and a deed of trust securing the same was authorized. Later on the same day meetings of directors and a joint meeting of stockholders and directors, consisting of Korn and Sufott were held, at which the loan of $225,000 was accepted and the deed of trust securing the same was authorized, and at which a plan of complete liquidation and dissolution of the corporation was approved.

Some time during December 4, 1962, the buyers delivered, or caused to be prepared by Lyon, Roache & Horan Title Settlements, Inc., and duly executed, a deed from the corporation to "David Korn, Trustee" under unrecorded Joint Venture Agreement dated December 4, 1962, a promissory note for $105,000, payable to the petitioner, signed by "David Korn, Trustee, Victoria Associates" and guaranteed personally by the buyers and their wives, a second deed of trust securing the note, signed by "David Korn Trustee"; note in the amount of $225,000 payable to Perpetual Building Association signed by David Korn as trustee; and a first deed of trust securing that note. The above mentioned deed and deeds of trust conveyed Lot 853 in Square 2662 (the Victoria Apartment House); and were placed on record in the office of the Recorder of Deeds of the District of Columbia on January 3, 1963.

After the recordation of the deed and deeds of trust there was distributed the following: to Perpetual Building Association the note for $225,000 signed by Korn as trustee; and to the petitioner $131,900.03 ($155,000, less adjustments), and a note for $105,000 signed by Korn as trustee, and guaranteed by Korn, Sufott and their wives.

The District's assessing authority asserted a tax deficiency for the year 1963 on the theory that there had in effect been a sale by the corporation of its real estate and a distribution by the corporation to respondent of a taxable liquidating dividend.[4] The Tax Court, however, granted respondent's petition for a refund of the assessed deficiency, holding in substance that he had made a legitimate sale of his corporate stock—a capital asset by reason of his ownership for more than two years[5]—and that his gain thereon was accordingly excluded from his gross income.[6] The District urges here, as it did before the Tax Court, the view to which its assessor had subscribed, while respondent supports the Tax Court's position. After mature consideration of the opposing contentions in the light shed by the record, we affirm the Tax Court.

To be sure, a tax cannot be eluded by a device contrived to disguise the real nature of a transaction and make it appear to be something that it is not.[7] And with equal certainty, the judicial challenge, on presentation of a substantial claim of tax evasion, is to penetrate through form in a most careful search for substance, upon which the incidence of taxation depends.[8] But the Tax Court explored the District's charge that the transaction here was a subterfuge for a corporate sale of assets promoted by respondent,[9] and found instead that respondent had engaged only in a sale of his stock:

This is a case of *avoidance* and not of *evasion* of tax liability. The petitioner had the right to select the transaction involving the sale of his stock in order to avoid the liability for an income tax, which would have resulted if the real property had been conveyed to him upon dissolution of the corporation and then sold to the buyers.[10] It was natural and good business for him to have the note of $105,000 not only secured by a deed of trust on the property but to have the buyers and their wives guarantee its payment. The security of the deed of trust could not be effected until the property was transferred to Korn and Sufott or their trustee, which was done simultaneously with the delivery of his stock by the petitioner to the title company, Lyon, Roache & Horan Title Settlements, Inc. who like all title companies in similar transactions act as escrow agents until title is cleared. The fact that the deed, deeds of trust were not recorded, and the instruments, notes and cash were not distributed until January 3, 1963 is not significant or important. It is well known that title companies and attorneys reporting title to property and settling its sale or other transactions involving it do not distribute cash, notes or other instruments immediately upon the execution of appropriate documents. Caution requires

---

Neyman v. District of Columbia, CCH. D.C. Tax Reptr. ¶ 200–115 at 10,383 (D. C.Tax Ct.1967).

4. Compare Estate of Uline v. District of Columbia, 124 U.S.App.D.C. 5, 360 F.2d 820 (1966) ; Bord v. District of Columbia, 120 U.S.App.D.C. 175, 344 F.2d 560 (1965) ; Berliner v. District of Columbia, 103 U.S.App.D.C. 351, 258 F.2d 651, cert. denied 357 U.S. 937, 78 S.Ct. 1384, 2 L.Ed.2d 1551 (1958).

5. D.C.Code § 47–1551c(*l*) (1967 ed.).

6. D.C.Code § 1557a(b) (11) (1967 ed.).

7. Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 288–89, 66 S.Ct. 532, 90 L.Ed. 670 (1946) ; Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L. Ed. 981 (1945) ; Higgins v. Smith, 308 U.S. 473, 477–478, 60 S.Ct. 355, 84 L. Ed. 406 (1940) ; Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596 (1935) ; Adams Bros. Co. v. Commissioner of Internal Revenue, 222 F.2d 501, 505–506 (8th Cir. 1955).

8. See the cases cited *supra* note 7.

9. Compare Doyle v. District of Columbia, 124 U.S.App.D.C. 207, 363 F.2d 694 (1966).

10. We intimate no view as to respondent's tax liability had that alternative been pursued.

that a further examination be made of title records to see if there has been any conveyance, lien or change in the title since the effective date of the title report. * * *

The Court is of the opinion that upon delivery of his capital stock in the Victoria Apartment House Corporation by the petitioner to Lyon, Roache & Horan Title Settlements, Inc. and simultaneous execution of conveyance above described [11] the sale of the stock was effected; and that the transaction, as far as the petitioner was concerned was a capital transaction; and that he did not receive any taxable dividend from the corporation.[12]

We must accept the Tax Court's findings unless they are clearly erroneous,[13] and here we do not consider them to be so. Nor do we see reason to quarrel with the Tax Court's ultimate conclusion to the extent that it involved an application of legal doctrine. A taxpayer is at complete liberty to decrease his taxes or avoid them altogether by means which the law tolerates.[14] His motive to thereby reduce or eliminate taxation does not generate liability if without it the transaction does not do so.[15]

Respondent had a perfect right to sell his stock to anyone willing to buy on his terms, and to demand suitable security for the payment of the deferred balance of the sale price.[16] The Tax Court, on evidence we deem substantial, found that that is precisely what he did. We recognize, of course, that had the transaction been a corporate sale of the real estate followed by a liquidating dividend to respondent, very different tax consequences would have attached.[17] The distinction, however, is statutorily decreed,[18] and the results are matters of legislative rather than judicial concern.[19] On the record before us, we sustain the Tax Court's determination as to the side of the line upon which the dealings under attack happened to fall.[20]

Affirmed.

11. *Supra* note 3.

12. Neyman v. District of Columbia, *supra* note 3, at 10,383–10,384 (emphasis in original).

13. D.C.Code § 47–2404(a); Bord v. District of Columbia, *supra* note 4, 120 U.S.App.D.C. at 178, 344 F.2d at 563; District of Columbia v. Seven-Up Washington, Inc., 93 U.S.App.D.C. 272, 275, 214 F.2d 197, 200, cert. denied Seven-Up Washington v. District of Columbia, 347 U.S. 989, 74 S.Ct. 851, 98 L.Ed. 1123 (1954).

14. Knetsch v. United States, 364 U.S. 361, 365, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); Blueberry Land Co. v. Commissioner of Internal Revenue, 361 F.2d 93, 100 (5th Cir. 1966); Bridges v. Commissioner of Internal Revenue, 325 F.2d 180, 183–184 (4th Cir. 1963); Gregory v. Helvering, *supra* note 7, 293 U.S. at 469, 55 S.Ct. 266.

15. Commissioner of Internal Revenue v. Phillips, 275 F.2d 33, 35 (4th Cir. 1960); Cowden v. Commissioner of Internal Revenue, 289 F.2d 20, 23 (5th Cir. 1961); Chamberlin v. Commissioner of Internal Revenue, 207 F.2d 462, 468 (6th Cir. 1953), cert. denied 347 U.S. 918, 74 S. Ct. 516, 98 L.Ed. 1073 (1954); Stearns Magnetic Mfg. Co. v. Commissioner of Internal Revenue, 208 F.2d 849, 852 (7th Cir. 1954).

16. We are not called upon to express an opinion as to the tax liabilities, if any, of the purchasers of respondent's stock upon their liquidation of the corporation. See, however, the cases collected in Annot., 83 A.L.R.2d 718 (1962).

17. See the cases cited *supra* note 4.

18. While dividends distributed from corporate "earnings, profits, or surplus (other than paid-in surplus)" are includable in gross income, see D.C.Code §§ 47–1551c (m), 47–1557a(a) (1967 ed.) and cases cited *supra* note 4, gain from the sale or exchange of a capital asset is not. D. C.Code § 1557a(b) (11) (1967 ed.).

19. Compare United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, 454–456, 70 S.Ct. 280, 94 L.Ed. 251 (1950).

20. Compare Bord v. District of Columbia, *supra* note 4, 120 U.S.App.D.C. at 178, 344 F.2d at 563.