## GRADOVILLE v. IRVINE.

### No. 1497.

Municipal Court of Appeals for the
District of Columbia.

June 21, 1954.

Decided July 16, 1954.

Rehearing Denied July 29, 1954.

J. Grahame Walker, Washington, D. C.,
with whom John W. Jackson, Washington,

D. C., William L. Winston were on the brief, for appellant.

Arthur F. Carroll, Jr., Washington, D. C., with whom Francis G. Naughten and Dreher, McCarthy & Dreher, San Francisco, Cal., were on the brief, for appellee.

Before CAYTON, C. J., and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellee sued for $2,670.85 alleged to have been "advanced" by him to appellant. Appellee's testimony was that prior to World War II he, then a British subject, became friendly with appellant, an American citizen, when they were both working in the Philippines; that after the war he delivered to appellant certain sums of money to be held by appellant until he, appellee, needed them; that he made this arrangement because he expected eventually to come to America to live; that the sums he delivered to appellant amounted to $3,100, the last sum being paid over in April 1948; that at his request appellant paid out certain sums, leaving a balance of $2,670.85. This testimony was corroborated by an affidavit executed by appellant on April 18, 1949, in which he stated that he owed appellee the sum of $2,670.85. The affidavit was executed for the purpose of delivery to the American Consul at Ottawa to aid appellee in securing a visa for entry into the United States. Appellee further testified as to his unsuccessful efforts to have appellant repay him.

Appellant offered no testimony and rested his defense solely on the statute of limitations. The trial court ruled against this defense and awarded judgment in appellee's favor for the full amount of his claim. The only question on this appeal is whether appellee's claim is barred by the statute of limitations. This requires consideration of three questions: (1) what was the nature of the transaction between the parties; (2) when did the statute begin to run; and (3) was the running of the statute tolled.

■ Although the parties at various times in their correspondence referred to the money as being a debt of appellant which he owed to appellee, there is no indication or even implication in the evidence that the money was a loan. It seems quite clear that appellee correctly stated the situation in one of his letters to appellant when he wrote: "My funds were remitted to you for safe keeping * * *." The transaction was in the nature of a gratuitous bailment for an indefinite time. This being so, the statute did not begin to run until there was a demand for return of the money and a refusal or some other act of the appellant inconsistent with the bailment. Schupp v. Taendler, 81 U.S.App. D.C. 59, 154 F.2d 849.[1] On such a happening our three-year statute of limitations began to run.

■ Appellee testified that in the latter part of 1949 or the early part of 1950 he wrote appellant and asked that he send him the money he was holding for him. In response on April 14, 1950, appellant wrote, stating in substance that he was not able to pay the money, that the money had been used by him in some business venture with appellee's permission and that appellee had taken a chance on getting his money back. Appellant concluded by writing: "But you'll get your money eventually although you should realize that you can't count on it in the immediate future." Sometime later appellee wrote denying that he had authorized the use of the funds. The letter of April 14, 1950, constituted a refusal of appellee's demand sufficient to start the running of the statute. Although appellant did not in express words refuse to pay, he confessed inability to pay and acknowledged his use of the funds for a purpose claimed by appellee to have been unauthorized. Despite appellant's statement that the money would be eventually paid, his letter clearly indicated a position entirely inconsistent with the terms of the

1. See also Calvin v. Rafferty, D.C.Cir., 214 F.2d 230.

bailment. Thus the statute began to run on April 14, 1950, or a few days thereafter if time is allowed for receipt of the letter by appellee. This action was not commenced until October 26, 1953, and is barred by the statute unless tolled by a letter written by appellant on December 28, 1950.

In the last mentioned letter appellant wrote at length regarding a serious illness he had had, his attempt to regain his former health, and his expenses in connection therewith. In response to two letters appellee had written regarding payment of the money, appellant wrote: "I regret that I am in no position at present to send you any money. * * * Certainly I wish I could pay you off, or even partially, but with Dr. bills, moving, etc., I just don't have anything to spare. * * * I realize what it is to be up against it and if I could see any possible way to raise some cash I'd do it." Following these statements he added: "My chief concern is that I do not have a relapse which is always a possibility so long as finances continue to be a major source of worry."

In his letter appellant recognized or acknowledged that he owed the money to appellee, but a mere acknowledgment of a debt is insufficient to stop the running of the statute. There must be a promise to pay either express or implied. The letter contained no express promise. A promise can be implied only if the circumstances of the acknowledgment "show a clear intention to pay the debt." Moore v. Snider, 71 App.D.C. 293, 109 F.2d 840, certiorari denied, 309 U.S. 685, 60 S.Ct. 808, 84 L.Ed. 1029. Appellant's statements indicated no intention to pay, but merely expressed regret at his inability to pay. If any promise to pay could be implied, it was a promise conditioned on regaining his health and becoming financially able to pay. There was no showing that this condition had been met. Our conclusion is that the letter of December 28, 1950, did not stop the running of the statute and the trial court was in error in holding that appellee's claim was not barred by the statute.

 Appellee makes the argument that the affidavit of April 18, 1949, which appellant executed to aid appellee's entry to the United States, was a substitute for the bond or undertaking required by 8 U.S.C.A. § 1183, and should be given the same status as a bond or sealed instrument and therefore the twelve-year statute of limitations is applicable. He cites no authority for this proposition and we have found none. Furthermore, it is plain that the affidavit was mere evidence of, and did not create, the obligation on which this action was based. Filson v. Fountain, 90 U.S.App.D.C. 273, 197 F.2d 383.

Judgment reversed with instructions to enter judgment for appellant.