**Noel C. IRVINE, Appellant,**

**v.**

**Frank T. GRADOVILLE, Appellee.**

**No. 12367.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 21, 1955.
Decided April 14, 1955.

Mr. Arthur F. Carroll, Jr., Washington, D. C., with whom Mr. Francis G. Naughten, Washington, D. C., was on the brief, for appellant.

Mr. J. Grahame Walker, Washington, D. C., with whom Mr. John W. Jackson, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, BAZELON and BASTIAN, Circuit Judges.

---

BASTIAN, Circuit Judge.

Appellant (plaintiff) filed suit in the Municipal Court to recover $2,670.85 claimed to have been advanced by him to appellee (defendant). Appellant's testimony was to the effect that after World War II he delivered to appellee, with whom he had become friendly, certain sums of money to be held by appellee until appellant needed the money; that he made this arrangement because he expected to come to Washington eventually to live; that he delivered to appellee sums amounting to $3,100, the last sum being delivered in April 1948; and that at appellant's request appellee paid out certain sums, leaving the balance of $2,670.85. It further appears from appellant's testimony that at appellant's request, appellee executed an affidavit on April 18, 1949, in which he stated that he owed appellant the amount claimed, said affidavit being executed to aid appellant in securing a permanent visa into the United States. Appellant further testified that he had made efforts to have appellee repay him the balance ($2,670.85) of the sums so advanced, but that he had been unsuccessful. Appellee offered no testimony, relying entirely on the statute of limitations.[1]

The Municipal Court ruled against appellee and awarded judgment in appellant's favor for the amount of his claim. This judgment was reversed by the Municipal Court of Appeals, with instructions to enter judgment for appellee.[2] We allowed this appeal.

The Municipal Court of Appeals, quite correctly we think, ruled that three questions were involved: (1) what was the nature of the transaction between the parties; (2) when did the statute of limitations begin to run; and (3) was the running of the statute tolled?

We also agree with the Municipal Court of Appeals that the transaction was in the nature of a gratuitous bailment for an indefinite time; and that, this being so, the statute of limitations did not begin to run until there was a demand for the return of the money and a refusal or some other act of the appellee inconsistent with the bailment.[3]

In the latter part of 1949 or early in 1950 appellant wrote appellee asking him to send the money. In response thereto, on April 14, 1950, appellee wrote appellant stating that he was not able to pay the money, that the money had been used by appellee with appellant's permission, and that "* * * you'll get your money although you should realize that you can't count on it in the immediate future."

The Municipal Court of Appeals ruled that the statute of limitations began to run on April 14, 1950, or within a few days thereafter, if time were allowed for receipt of the letter by appellant; and that as this action was not commenced until October 26, 1953, it was barred by the statute of limitations unless tolled by a letter written by appellee on December 28, 1950, which letter we quote in the margin.[4] The Municipal Court of Appeals held that this letter was a mere acknowledgment of the debt and was insufficient, under Title

---

1. Title 12, Sec. 201, D.C.Code 1951: "No action shall be brought * * * upon any simple contract, express or implied, or for the recovery of damages for any injury to real or personal property, or for the recovery of personal property, or damages for its unlawful detention after three years from the time when the right to maintain any such action shall have accrued; * * *."

2. Gradoville v. Irvine, D.C.Mun.App., 107 A.2d 122.

3. Schupp v. Taendler, 81 U.S.App.D.C. 59, 154 F.2d 849.

4.
        "2924 Upton St., N.W.
        Washington, D. C.
        Dec. 28, 1950
"Dear Noel,
"Received your two letters addressed to me at the office.
"I regret I am in no position at present to send you any money. If you have maintained contact with Tommie or Tillie you perhaps have been informed of my

12, Section 305, of the D.C.Code 1951,[5] to stop the running of the statute. It further held that there must be, in addition to an acknowledgment of debt, a promise to pay, either express or implied, and, citing Moore v. Snider, 71 App.D.C. 293, 109 F.2d 840, 841, certiorari denied, 309 U.S. 685, 60 S.Ct. 808, 84 L.Ed. 1029, ruled that the letter of December 28, 1950, was not sufficient. We disagree.

In Moore v. Snider, supra, we held that "the acknowledgment is really only evidence of a promise to pay. The promise implied is what counts. * * * *It follows, we think, that the acknowledgment must not be accompanied by circumstances which negative any intention or promise to pay.*" (Emphasis supplied.)

Applying that language to the facts in this case, we think it is clear that there was more than a mere acknowledgment of the debt, as was the case in Moore v. Snider, supra. In that case, which was decided on the pleadings only, it appeared that in 1930 appellant therein purchased merchandise from Garfinckel's store to the amount of the claim and promised to pay the account. In May 1937, in response to a written request stating that the company's auditors were making a regular examination of its accounts and wished to verify them from an independent source, appellant therein signed a prepared form-statement as follows:

> serious illness. Certainly I wish I could pay you off or even partially but with Dr. bills, moving, etc., I just don't have anything to spare.
>
> * * * * *
>
> "I realize what it is to be up against it and if I could see any possible way to raise some cash I'd do it. I hope you have been able to find something in the way of employment.
>
> "My chief concern is that I do not have a relapse which is always a possibility so long as finances continue to be a major source of worry. I wish I could think I could recover to my former health, that I could again be the easy-going, care-free fellow which you used to say I was. I realize how irritable you have always

" 'The balance of $2,196.25 as of close of business May 27, 1937, due the Julius Garfinckel & Co. does not include consigned merchandise and is correct, except as noted below.

"Exceptions. To the best of my knowledge the above is correct.' "

In Moore v. Snider, appellant alleged in her replication that the written acknowledgment was obtained by the creditor by falsely stating to her that her admission of the correctness of the account was "for the one and only purpose of verifying its accounts and was of no legal significance whatsoever" and that except for this representation she would not have signed the paper. We held that, if this statement were true, the only reasonable inference therefrom repels the thought that the acknowledgment of itself implied a promise or willingness to pay the debt. We ruled that under those circumstances the District Court was in error in entering judgment for the creditor on the pleadings; and the case was remanded to permit the appellant to introduce evidence to prove the allegations in her rejoinder, adding that "if it shall appear that the accompanying circumstances under which the acknowledgment was made are such as to repel or leave in doubt the inference that appellant intended to indicate a willingness to pay, the plaintiff (appellee) ought not to have judgment."[6]

> been, but the way I am now, you aren't in the same class as I am.
>
> * * * * *
>
> "As ever,
> "Grad"

5. Title 12, Sec. 305, D.C.Code 1951: "In actions of debt or upon the case grounded upon any simple contract, no acknowledgment or promise by words only shall be deemed sufficient evidence of a new or continuing contract whereby to take any case out of the operation of the statute of limitations or to deprive any party of the benefit thereof unless such acknowledgment or promise shall be made or contained by or in some writing to be signed by the party chargeable thereby: * *."

6. It is significant that in Moore v. Snider, as appears from the record in the case

■ Turning now to the letter of December 28, 1950 (Note 4, supra), it will be noted that the appellee stated: "I regret I am in no position *at present* to send you any money." (Emphasis supplied.) This would indicate a willingness and intention to pay although there was a present inability to do so. Here the acknowledgment was not accompanied "by circumstances which negative any intention or promise to pay." On the contrary, there is an indication that, when able, appellee would pay. It was an acknowledgment in language showing a clear intention to pay the debt. Rahilly v. O'Laughlin, 8 Cir., 1 F.2d 1.

Under the circumstances of the case before us, we feel that rather than being authority for the appellee in this case, Moore v. Snider definitely requires a holding that the statute of limitations was tolled by the letter of December 28, 1950.

Reversed and remanded with directions to affirm the judgment of the Municipal Court.

---

in the District Court, Law No. 89950, the trial judge (Judge Jennings Bailey) on remand made findings of fact and conclusions of law holding that the circumstances indicated that acknowledgment of her indebtedness was sufficient to renew and revive the cause of action instituted against her; and the learned judge found that the defendant there intended the writing "as an acknowledgment of her indebtedness on her account with Julius Garfinckel and there were no accompanying circumstances *negativing* any intention or promise to pay the obligation." (Emphasis supplied.) There was no appeal from the judgment entered on these findings.

It has been held that where a man acknowledges the debt but specifically refuses to pay, the statute is not tolled; e. g., Frey v. Kirk, 4 Gill. & J., Md., 509, where the debtor acknowledged the debt but added, when advised that suit would be brought, "you may save yourself the trouble or expense as I have taken the benefit of the insolvent laws"; and Danforth v. Culver, 11 Johns, N.Y., 146, where the debt was acknowledged but the debtor added that he meant to "avail himself of the statute of limitations." In both these cases the declarations of the debtor were held to have "repelled" the presumption of a promise to pay. In the instant case, on the contrary, there were no declarations which can be construed to repel the presumption of a promise to pay. In fact, the language of the letter of December 28, 1950, indicated that payment would be made, although the debtor was presently financially unable to pay.