Miroslav J. SVESTKA and Sophie Svestka, Appellants,

v.

Edward PELL, Appellee.

No. 3927.

District of Columbia Court of Appeals.

Argued July 5, 1966.

Decided Nov. 28, 1966.

Rehearing Denied Dec. 19, 1966.

Werner Strupp, Washington, D. C., for appellants.

Morton Kudysh, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge:

Appellee Pell, a real estate broker, sued appellants, husband and wife, upon a promissory note for $5,000 executed by them to cover the balance of a brokerage fee due him as a result of procuring buyers for two apartment houses. Appellee had previously been paid $15,000 in part payment of his total commission. After a full hearing, at which all parties presented certain relevant documents, including listing agreements, contracts of sale and settlement sheets, as well as oral testimony concerning the negotiations and ultimate sale of the properties, the trial judge entered findings in favor of appellee for the full amount of the note and denied any recovery by appellants for an alleged overpayment of broker's fees. This appeal followed.[1]

The sale of one of the properties, Hilltop House, Inc., a corporation whose entire stock was owned by appellants, was accomplished through the sale of the corporate stock rather than through the conveyance of title to the real estate. The contract for the transfer of the stock provided, *inter alia*, that:

The seller agrees to pay any and all bills for merchandise, services, repair bills, utilities, payroll, payroll-taxes, withholding taxes, Corporation taxes, and any other obligations incurred by the Corporation until the date of settlement.

The primary question before us is whether appellants, as sellers, had realized a net sum of $190,000 from the sale of the two properties, it having been stipulated in the listing agreements, and guaranteed by appellee, that appellants would receive no less than $190,000 after deducting the brokerage fee and deeds of trust. The resolution of this issue rests solely upon whether the above corporate debts[2] assumed by appellants should be deducted from the sale of stock in determining whether they had received $190,000. Appellants contend that because they paid these corporate obligations they had received $10,247.72 less than guaranteed them by the listing agreements; that they had already advanced appellee a sum in excess of the commission to which he was entitled and thus he is precluded from recovering upon the promissory note. Both sides are in accord that without these

1. This is the second appeal in this case. The first arose from the granting of a summary judgment in Pell's favor upon the opening statements of counsel and resulted in the remand for a full hearing on the merits. 209 A.2d 795 (1965).

2. On the date of settlement these items had not yet been exactly determined. Subsequent cash adjustments in connection with Hilltop House required appellants to pay $13,220.96.

deductions, appellants would have received a net cash settlement of more than $190,000.

■ The record reflects that during the negotiations prior to the ultimate sale of the property many changes and modifications were made in the original listing agreements, the terms upon which the property would be sold, and the basis upon which appellee's commission would be computed. There was no discussion or oral or written provision that the sum guaranteed to appellants was to be affected by any deduction other than deeds of trust and real estate commissions. Throughout appellants were in consultation with their attorney and their certified public accountant who were fully acquainted with the business operations of appellants, the terms under which they were willing to sell, and the various modifications in the agreements between Mr. Pell and the Svestkas. The note here in question was signed and delivered, without objection, to appellee by appellants at the time of settlement, when they were accompanied by both their attorney and their accountant. From the record we can reach only the conclusion that, with the acquiescence and advice of their legal and financial advisors, appellants signed the note for the additional $5,000 commission with no contemplation that the yet undetermined sum they would have to pay the buyers in connection with the sale of the stock of Hilltop House was intended to be deducted from the gross sales price and with no question as to appellee's entitlement to the additional $5,000 commission.

■ Appellants maintain that whether the corporate debts assumed by them should be deducted from the sales price constituted an ambiguity and that from the evidence this ambiguity should have been resolved in their favor. Were no other factors present, appellants' contention might be valid; but their actions, and the course of dealings between Pell, the sellers, and the latter's attorney and accountant support the findings of the trial judge that appellee produced buyers for the properties involved on terms acceptable to the sellers, as evidenced by their conduct at the time of settlement, and thus he is entitled to his agreed-upon commission, part of which is represented by the note here in question. The intention of parties to a contract must be determined not only from the terms of the written agreement, but also from the actions of the parties in relation thereto.[3] The trial judge had before her sufficient evidence from which she could conclude that at the time appellants executed the promissory note they did so with full understanding of their commitment and how it was to be treated.

■■ But even if we were to concede, *arguendo,* that ambiguities existed, we must presume that the trial judge fully weighed the testimony of both sides in the light of the credibility of the witnesses and evaluated the documentary evidence. Her resolution in favor of the broker cannot be disturbed by us where there is evidence to support her ruling. We concur in the findings upon which the judgment rests.

Affirmed.

3. Wm. P. Lipscomb Co. v. Kaldenbach & Wysong, Inc., D.C.Mun.App., 187 A.2d 124 (1962); Green v. Obergfell, 73 App. D.C. 298, 121 F.2d 46, cert. denied 314 U.S. 637, 62 S.Ct. 72, 86 L.Ed. 511 (1941).