**Christopher M. KERNS, Kerns and Klimek, P.C., Appellants,**

**v.**

**AMERIPRINT, INC., Appellee.**

**No. 91–CV–242.**

District of Columbia Court of Appeals.

Argued Oct. 14, 1992.

Decided March 5, 1993.

Christopher M. Kerns, pro se.

Robert F. Leibner, Washington, DC, for appellee.

Before TERRY and FARRELL, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

This is an appeal from the trial court's judgment in favor of appellee Ameriprint, Inc., in the amount of $4,272.02. The judgment ordered the return to Ameriprint of that portion of a $10,000.00 retainer fee which the trial court, sitting without jury, found the retained law firm of Kerns & Klimek, P.C., appellant, was not entitled to keep. On appeal, Kerns & Klimek, P.C. (hereinafter "Kerns"), argues that Ameri-

---

print's action for return of a part of the retainer agreement was barred by the statute of limitations, D.C.Code § 12–301 (1989 Repl.), and that the trial court erred in dismissing the action against the individual appellant, Christopher M. Kerns, Esquire, "without prejudice" rather than on the merits. We affirm.

## I.

This litigation arises out of the sale of the stock of Ameriprint, Inc. by Ronald Cobb and others to David Morey pursuant to a stock purchase agreement of October 23, 1985, and a contemporaneous escrow agreement. A few months before the sale, on August 27, 1985, Ameriprint had retained Kerns as its counsel and paid a retainer fee of $10,000.00, against which Kerns' services were to be charged at the rate of $125.00 per hour, plus expenses. Kerns continued to send monthly statements to Ameriprint calculated through the 19th of each month to indicate Kerns' fees and expenses.

The trial court made findings embracing the foregoing uncontested facts, and also found that the negotiations for the sale of the stock by Cobb, et al. to Morey took place during the period October 1 to October 23, 1985, and that upon entering the agreement, Morey, as the new president of Ameriprint, hired Cobb to serve generally in a sales capacity. It also found that the stock purchase agreement recited that each party, Morey on the one side and Cobb, et al., on the other, warranted that no obligations existed with respect to the negotiations, subject to the provision that:

> Notwithstanding the foregoing the Company shall pay an amount not to exceed $1,000.00 for the legal services of the Company's attorney relative to this agreement and the negotiations relative thereto.

The court also found that the central parties concerned in the matter of the sale of the stock were the owners of the stock and the prospective purchaser (rather than Ameriprint with which Kerns had the retainer agreement).

Kerns played an active role in the negotiations between Cobb and Morey leading up to the sale of stock. The purchaser, Morey, used the services of another attorney, Lane Potkin, Esquire. The court inferred that much of Kerns' work during the period October 1–23 was for Cobb, a party to the sale, as distinguished from the corporation. The court found specifically that during that period Kerns performed a total of forty-eight hours of legal services. The court went on to find that the evidence did not show an allocation of definite hours of work performed for the stockholders and the work performed for the company. The court indicated it was satisfied that at least eight hours of the total work must have been allocable to work performed for the corporation, and then stated "[t]aking into account the obligation of an attorney to define such matters precisely, the Court finds that only an additional $1,000.00 was owed by the Corporation to Kerns & Klimek, P.C. for October 1, 1985 through October 23, 1985."

Considering the totality of the work Kerns did for Ameriprint after the initiation of the retainer agreement, including expenses as well as the work between October 1st and 23rd, the trial judge found that the provision of those services entitled Kerns to $5,727.98 at the contract rate of $125.00 an hour. Accordingly, he awarded judgment to Ameriprint in the amount of $4,272.02, the balance of the $10,000.00 retainer.

## II.

### A. The Statute of Limitations

On the issue of limitations, the judge concluded that a billing letter addressed to both Morey and Cobb by Kerns, and dated December 17, 1985, did not commence the running of the statute. He found that the letter was received by Cobb who did not inform Morey of its receipt but instead informed Kerns that he, Cobb, did not agree with the number of hours charged and that the proper party to whom Kerns should send the bill was Morey, the new president of the corporation. Rejecting Kerns' position that the letter of De-

cember 17, 1985, triggered the running of the statute, the trial judge found:

> Under the rapidly changing circumstances of the status of Mr. Cobb and Mr. Morey relative to the Corporation and to the Corporate Attorney and the ambivalent position of Mr. Cobb as an individual possibly liable for legal services rendered him personally as shareholder, the Statute began to run on January 4, 1986 and the cause is not barred by the Statute of Limitations.

Kerns then mailed the same billing letter to Morey on January 3, 1986. The suit in question was filed on January 4, 1989, a date the judge found to be within the three-year statute of limitations.[1] D.C.Code § 12–301.

It is plain that the record supports the trial judge's findings regarding the amount owed Kerns by Ameriprint, and those findings are not seriously challenged on this appeal. As to the judge's findings and conclusions regarding the statute of limitations, the matter principally challenged by Kerns on this appeal, we are persuaded that the record supports the trial judge's rulings in that regard also.

As a general rule, an action accrues and the statute of limitations begins to run when the suit could first be initiated. *Toomey v. Cammack*, 345 A.2d 453, 455 (D.C. 1975); *see, e.g., Jones v. Howard Univ.*, 574 A.2d 1343, 1347 (D.C.1990) (the date of a letter, which terminated the plaintiff's employment, triggered the running of the statute of limitations on a claim of wrongful discharge since it marked when the suit could first be initiated); *Press v. Howard Univ.*, 540 A.2d 733, 734 (D.C.1988) (actual breach of employment contract, which occurred in March and again in May of 1980, marked point when suit could first be initiated; thus action filed in December of 1983 based on that breach was barred by the statute of limitations). Since Morey received the billing letter after January 3, 1986, it appears that a suit could not have been initiated on or before that date, and thus the filing date of this proceeding on

January 4, 1989, fell within the three-year statutory period.

At the outset of trial, in arguing for reconsideration of defendants' unsuccessful motion for summary judgment, Kerns argued with respect to his letter of December 17, 1985, that "obviously, that's the final bill." With regard to that bill, to the contrary, the record firmly supports the trial judge's finding that the letter of December 17 was actually received by Cobb, who did not inform Morey of its receipt. Although the letter was addressed to both Cobb and Morey, attorney Kerns directed the letter to Cobb by sending it with a cover note addressed to Cobb that said, "Ron, if you have any problems with this, please call me. If not, give it to Dave [Morey]. Best regards, Chris." Thus, it is clear that Morey did not receive this letter until after January 3, 1986, following Kerns' resending of the letter to Morey himself.

The circumstances under which Cobb received the December 17th letter warrant the trial judge's finding that in light of the "ambivalent" situation in which Cobb found himself at that time, notice to him was not notice to Ameriprint. The testimony of Morey and Potkin was sufficient to establish that Kerns was acting as Cobb's attorney in connection with the sale of Cobb's shares of stock in Ameriprint to Morey. Thus, as Potkin testified, Cobb had an interest adverse to that of Ameriprint in connection with Kerns' bill. To the extent that Ameriprint might successfully contest Kerns' bill for services rendered in connection with the negotiation of the agreement for the sale of Cobb's shares of Ameriprint stock, Cobb would be exposed to liability to Kerns.

Cobb relinquished his previous position as president of Ameriprint when he sold his shares to Morey, who became the new president following the execution of the stock purchase agreement. Thus, the trial court was warranted in finding that notice to Cobb by letter of December 17 was not notice to the corporation. This finding is

---

1. Kerns does not argue that even if the notice mailed on January 3, 1986, was the triggering event, the statute had run by the time suit was filed.

not undercut by the fact that Morey had permitted Cobb, who was in the course of making a transition from president to salesman, to use the title "vice president." Morey testified that Cobb was merely a vice president-marketing rather than a corporate vice president.

A subsidiary argument made by Kerns is that the rendition of statements by the law firm to Ameriprint on October 25 and November 25, 1985, was sufficient to trigger the running of the statute of limitations. There was evidence that Cobb brought the former of those statements to the attention of Morey who was surprised, as Cobb was, at the amount of the billing. There is also evidence that Morey suggested that Cobb look into the amount of the bill with Kerns and get an explanation of his charges. Once again, the ambiguous and shifting relationships of the parties provide ample reason for sustaining the trial court's decision that the statute was not triggered until after January 3, 1986. The essential weakness of Kerns' theory regarding the October 25th billing is that when that statement was sent, it was in the context of an understanding—created by agreement of Cobb and Morey negotiated by Kerns as Cobb's counsel—that Ameriprint would pay only $1,000.00 of Kerns' fee for negotiating the agreement, necessarily implying that payment of· any additional amount for services rendered by Kerns in connection with the negotiations would be Cobb's responsibility. Thus, in context, the October 25th statement was inherently ambiguous and was in large part directed to Cobb.[2] There is, moreover, no evidence that Cobb ever suggested to Morey that Kerns' bill rendered in connection with negotiations between October 1st and October 23rd, to the extent that it exceeded the $1,000.00 cap, would come out of the $10,000.00 retainer. Nor did specific language of the October 25th bill itself suggest that. While the record is sparse concerning the November 25th statement which Kerns claims to have

sent to Ameriprint (and no copy of such a bill was produced), the same reasoning would apply to it.

Further support for the conclusion that Morey's receipt of the bill sent by Kerns to Morey on January 3, 1986, was the event that caused the commencement of the running of the statute is provided by the fact that by letter of November 22, 1985, Morey demanded that $7,500.00 of the retainer be returned to the corporation. That demand was not refused by Kerns until Morey's receipt of the letter of January 3, 1986. There was, in essence, a demand by a bailor, Ameriprint, for return of part of the bailed property—the $10,000.00 retainer. The refusal by the bailee, Kerns, to return the bailed property, was the event that triggered the running of the statute. *Estate of McCagg*, 450 A.2d 414, 416 (D.C. 1982). "[A] cause of action for return of the property does not arise until demand has been made and refused, or the bailee takes some action inconsistent with the bailment." *Id.* (citations omitted); *see also Nyhus v. Travel Management Corp.*, 151 U.S.App.D.C. 269, 281, 466 F.2d 440, 452 (1972) ("[w]here a demand is necessary to perfect a cause of action, the statute of limitations does not commence to run until the demand is made"). Accordingly, Morey's receipt of the January 3, 1986 letter, in which Kerns refused Morey's demand to return the retainer, began the running of the statute of limitations. The trial judge correctly ruled that the statute was not a bar to this action.

### B. Dismissal Without Prejudice

■ As to the second issue Kerns raises on appeal, we are satisfied that it was within the trial judge's discretion to dismiss the action against Kerns personally "without prejudice" lest Ameriprint, should it find itself unable to collect against the defunct P.C. of Kerns & Klimek, should also be unable to seek to recover from Kerns without facing his claim of *res judicata*.[3]

---

**2.** The statement asked for payment for "[n]umerous conferences with client, attorneys; Draft escrow sales agreements; Review corporate records; Telephone conferences with

client" in addition to fees for long distance telephone calls, copying costs and local travel.

**3.** Even though the dismissal was entered without prejudice, we do not suggest that Ameriprint

D.C.Code §§ 29–426, –428, –429 (1991) provide recourse against former members of a P.C. which is unable to pay a judgment against it.[4]

The factual findings of the trial judge were supported by competent evidence based on the record, and we find no error of law requiring reversal. Accordingly, the judgment is

*Affirmed.*

can relitigate the specific issues it litigated against Kerns individually upon which the trial judge explicitly found in Kerns' favor—specifically, negligence, wrongful acts of misconduct, and fraud or breach of fiduciary duty.

**4.** In the event that Kerns & Klimek, P.C. fails to satisfy the judgment against it, Ameriprint may initiate a suit for dissolution of the P.C. under D.C.Code § 29–426. Once the suit is filed, Ameriprint can make Kerns a party defendant to it,

D.C.Code § 29–428, and the court may require, upon an accounting of the assets and debts of the P.C., that Kerns, as a party defendant to the suit, pay the judgment. D.C.Code § 29–429.